## DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| THE BANK OF NOVA SCOTIA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | **Civil Action No. 2012-0006** |
| ALPHONSO CHRISTIAN a/k/a | ) | |
| ALPHONSO P. CHRISTIAN, | ) | |
| RAYMOND JAMES, LYSTRA JAMES, and | ) | |
| DIRECTOR OF THE VIRGIN ISLANDS | ) | |
| BUREAU OF THE INTERNAL REVENUE | ) | |
| OF THE GOVERNMENT OF | ) | |
| THE VIRGIN ISLANDS, | ) | |
| | ) | |
| **Defendants.** | ) | |

**Attorneys:**
**Johanna Harrington, Esq.,**
St. Thomas, USVI
    *For Plaintiff Bank of Nova Scotia*

**Pedro K. Williams, Esq.,**
St. Thomas, USVI
    *For Defendants Raymond and Lystra James*

**Ariel Marie Smith-Francois, Esq.,**
St. Thomas, USVI
    *For Defendant Virgin Islands Bureau of*
    *Internal Revenue*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Motion for Default Judgment and Summary Judgment (Dkt. No. 19) and the Amended and Renewed Motion for Default and Summary Judgment (Dkt. No. 25), filed by Plaintiff Bank of Nova Scotia ("Scotiabank"). By these Motions, Scotiabank seeks default judgment against Defendant Alphonso Christian a/k/a Alphonso P. Christian ("Christian") and summary judgment against Defendants Raymond James

and Lystra James (the "Jameses") and Defendant Director of the Virgin Islands Bureau of the Internal Revenue of the Government of the Virgin Islands ("VIBIR"). For the reasons discussed below, the Court will grant the Amended and Renewed Motion for Default Judgment against Christian and will grant the Amended and Renewed Motion for Summary Judgment against the Jameses and VIBIR. The Court will deny Scotiabank's initial Motion for Default and Summary Judgment as moot.

## I.   BACKGROUND

On January 17, 2012, Scotiabank filed a Complaint against Christian, the Jameses, and VIBIR, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). Scotiabank asserts that Christian owned certain real property, mortgaged to Scotiabank, and that he purported to grant and convey that property (the "Property") to the Jameses via "Corrective Deed of Gift" without the knowledge or consent of the Scotiabank. *Id.* ¶ 3. The Property is described in the Corrective Deed as:

> Plot No. 88-U Estate La Grande Princesse, Company Quarter, Christiansted, St. Croix, U.S. Virgin Islands, consisting of approximately 0.287 U.S. acres, more or less, as more fully shown on Drawing No. 4364 dated April 6, 1987.

(Dkt. No. 21-1). The Complaint further alleges that the Jameses are the ostensible grantees and present owners of record of the Property. (Dkt. No. 1, ¶ 4). VIBIR was named as a Defendant because it claims tax liens against the Property for unpaid taxes of the Jameses, recorded on May 24, 2007 and May 25, 2010. *Id.* ¶ 5.

The Complaint further states that, on October 29, 1993, Christian executed a Construction Mortgage Note (the "Note"), in which he promised to repay Scotiabank the principal sum of $144,000.00, together with interest at the rate of 9.0% per annum. *Id.* ¶ 6. The Complaint refers to a "Construction Loan Agreement," which provides that "the day following

the last day of the Construction Period, the Note automatically converted to a five (5) year installment mortgage note continuing to bear interest on the principal sum outstanding at the rate per annum set forth above, payable in sixty (60) consecutive monthly installment payments of principal and interest." *Id.* The repayment of Christian's indebtedness to Scotiabank was secured by a First Priority Mortgage (the "Mortgage") on the Property, executed by Christian on October 29, 1993 by power of attorney. *Id.* ¶ 8.

The Complaint alleges that Christian defaulted under the terms and conditions of the Note and Mortgage by failing to pay principal and interest when due, and by purporting to convey the Property without Scotiabank's consent. *Id.* Pursuant to the terms of the Note and Mortgage, Scotiabank elected to declare the entire unpaid principal, interest, and late charges due and payable, and claimed that $207,731.50 was due as of October 12, 2011, plus interest accruing at the rate of $34.30 per diem. *Id.* ¶ 9. Scotiabank seeks judgment against Christian for unpaid principal and interest due and payable; a declaration that it holds a first priority mortgage; a determination of the priority of liens; foreclosure of the Mortgage and sale of the Property to pay Christian's indebtedness to it; a judgment against Christian for any deficiency if the judgment is not satisfied after sale; and any costs and fees it incurred in protecting its rights in the Property. *Id.* at 4.

Christian was personally served with the Summons and Complaint on January 23, 2012. (Dkt. No. 10). The process server's affidavit states that Christian "responded to service in a normal manner and did not appear to be mentally disabled or have diminished capacity to understand what was happening," and "[a]t the time of service defendant was asked whether he/she is in active military service for the United States or for the Virgin Islands in any capacity whatsoever and gave a negative reply." *Id.* The Jameses were personally served on April 23,

2012 (Dkt. Nos. 9, 11); and the Director of the VIBIR was served on January 20, 2012. (Dkt. No. 8).

The Jameses answered the Complaint on February 14, 2012. (Dkt. No. 13). VIBIR filed an answer on March 9, 2012 in which it also asserted a Cross-Claim against Christian and the Jameses. (Dkt. No. 14). The VIBIR attached an Affidavit of Tax Debt to its Answer, which set forth that Christian owed taxes from 2004-2007 in the amount of $4,967.10, and the Jameses owed taxes for 2005 and 2008 in the amount of $13,974.73. (Dkt. No. 14-1). Also attached was a tax lien recorded on May 25, 2010 by VIBIR against the Jameses in that amount. *Id.*

The Jameses answered the Cross-Claim. (Dkt. No. 15). Christian never answered the Complaint nor has he appeared in this action. On May 24, 2012, Scotiabank filed an application for entry of default against Christian (Dkt. No. 16), and the Clerk of Court entered default against him on July 12, 2012. (Dkt. No. 18).

Two weeks later, on July 25, 2012, Scotiabank filed its initial "Motion for Default and Summary Judgment," seeking default judgment against Christian and summary judgment against the Jameses and VIBIR. (Dkt. No. 19). In its Memorandum of Law in support of its motion, Scotiabank contended that it was undisputed that Christian, through his attorney-in-fact, executed the Note and Mortgage on October 29, 1993; that Christian failed to comply with the terms of those documents and was in default for failing to pay principal and interest when due; that Scotiabank elected to declare the entire principal sum due, with all accrued interest and late charges; and that as of July 20, 2012, the total amount due was $224,216.08, comprised of $97,191.28 in principal, $64,650.58 in interest, $58,644.39 in add-on charges, and $3,729.73 in late fees, with interest continuing to accrue at the rate of $20.28 per diem. (Dkt. No. 20 at 3-4). The Memorandum of Law further stated that the Note and Mortgage provide that, upon default,

Scotiabank had the right to foreclose, proceed with sale of the Property, and recover from the proceeds of sale all money owed to Scotiabank, including money expended for real property taxes, insurance premiums or other expenses incurred prior to sale of the Property. *Id.* at 4. It added that Scotiabank's entitlement to a judgment of foreclosure is not contested. *Id.*

Scotiabank's attached to its Statement of Undisputed Material Facts the Corrective Deed of Gift, dated March 11, 2004, between Alphonso Christian and Raymond James and Lystra James. (Dkt. No. 21-1). The Corrective Deed provided, *inter alia*, that the Property that Christian was granting to the Jameses was "free from encumbrances." *Id.* at 2. Christian's affidavit attached to the Deed indicated that the transfer was an "intra-family transaction intended as an inter-vivos gift." *Id.* at 4. Also attached to the Statement of Undisputed Facts was an Affidavit from Bank Manager Hugh C. Brown, in which he attested to the $224,216.08 total amount due Scotiabank on the loan as of July 20, 2012. (Dkt. No. 21-5). He attached a one-page loan history to support his assertions. (Dkt. No. 21-6).

Scotiabank's counsel at the time, Attorney Matthew J. Duensing, attached an Affidavit to the Memorandum of Law in which he averred that his firm was retained to represent the Bank; that his billing rate was $200.00 per hour; Sandra LaPlace's billing rate was $185.00 per hour; Georgina Nicholas' billing rate was $125.00-$135.00 per hour; and Brenda Gib's flat fee for foreclosure searches was $175.00, and her hourly billing rate was $150.00. (Dkt. No. 20-2). He attached billing records showing that the total time spent on this matter from October 12, 2011 through July 21, 2012 was 37.80 hours; that the total amount of attorney's fees incurred was $7,104.00; and that the total amount of costs expended was $1,037.22. (Dkt. No. 20-3).

VIBIR filed a "Response to Plaintiff's Motion for Summary Judgment" in which it acknowledged the priority of the Mortgage held by Scotiabank. (Dkt. No. 22). VIBIR also

requested that the final judgment entered by the Court "specifically incorporate the order of priority status held by VIBIR and also enter judgment in favor of VIBIR for outstanding tax debt owed by co-Defendants, Alphonso Christian, Raymond James and Lystra James along with the statutory rate of interest." *Id.* The Jameses did not file a response.

On March 20, 2014, Scotiabank filed an "Amended and Renewed Motion for Default and Summary Judgment" ("Renewed Motion"). (Dkt. No. 25). The Renewed Motion stated that the July 2012 Motion seeking default and summary judgment "did not properly address Defendants James and [VIBIR's] interest in these proceedings." *Id.* at 1, n.1. The Statement of Undisputed Material Facts in support of the Renewed Motion attached the affidavit of Karen Stair, Senior Paralegal at Scotiabank, who updated the amounts due on the debt as of February 27, 2014. (Dkt. No. 27-5). Ms. Stair averred that Christian owed a total of $256,763.15, comprised of $97,191.28 in principal, $30,901.30 in interest, $69,978.73 in add-on charges, $51,755.08 in interest on add-on charges, $3,729.73 in late fees, and $3,207.03 in additional late fees, with interest continuing to accrue at the rate of $19.29 per day. *Id.* ¶ 5. The Statement of Material Facts recounted that Christian, by Corrective Deed dated March 11, 2004, transferred his interest in the Property to the Jameses; that he did not obtain permission from Scotiabank to transfer his interest and, at the time of the transfer, he was still indebted to the Bank under the terms of the Note and Mortgage; and that VIBIR was included as a Defendant because it recorded a tax lien against the Property on May 25, 2010. (Dkt. No. 27).

The Bank's counsel also filed an updated Affidavit in support of attorney's fees and costs. (Dkt. No. 26-2). In his Affidavit, Attorney Duensing stated that his billing rate was $350.00 per hour; Christopher Brookhart's billing rate was $225.00 per hour; Sandra LaPlace's billing rate was $185.00-$200.00 per hour; and Georgina Nicholas' billing rate was $135.00 per

hour. The Affidavit further stated that the total amount of attorney's fees incurred was $12,290.50; and that the total amount of costs expended was $1,038.50, and showed that the firm spent a total of 63.70 hours on this matter through March 18, 2014. (Dkt. No. 26-2).

On July 23, 2014, the Court approved Scotiabank's substitution of Attorney Johanna Harrington for Attorney Duensing. (Dkt. No. 30).

On November 14, 2014, the Court ordered Scotiabank to provide supplemental documentation to explain the damages it was seeking in greater detail. (Dkt. No. 31). In its Response to the Court Order, the Bank filed a "Supplemental Affidavit of Indebtedness," executed by Adonis Morton, Scotiabank Manager of Real Estate Owned Asset Disposal. (Dkt. No. 34-1). Mr. Morton averred that he personally reviewed the Bank's records regarding the loan made to Christian. *Id.* ¶ 3. He explained how interest on the Note and on the Add-On Charges was calculated, although he asserted that Scotiabank was no longer seeking accrued interest on the Add-On Charges. *Id.* ¶¶ 4, 9. Mr. Morton added that Christian's loan had been placed in default status on July 1, 2010 after Christian failed to make the May and June 2010 payments, as was indicated on the attached Scotia Plan Loan/Mortgage History. *Id.* ¶ 6, Dkt. No. 34-2.

Mr. Morton explained that the $69,978.73 in Add-On Charges was comprised of $56,962.96 in forced place insurance; $1,025.00 in valuation fees; and $11,990.77 in legal fees. (Dkt. No. 34-1, ¶ 8). He also stated that the loan to Christian predated the Bank's conversion to computerized records, so sums for forced place insurance and late fees were transferred to that system from a handwritten ledger which was attached to his Supplemental Affidavit. *Id.* ¶¶ 8, 11; Dkt. No. 34-4. In addition, Mr. Morton described how late fees were calculated, and why the "additional late fee" charge of $3,207.03—moratorium interest from 1995—was assessed. *Id.* ¶¶ 10, 12; Dkt. No. 34-7. He also asserted that the $3,254.50 recoverable balance was comprised of

$146.25 in property inspections; $35.00 for property preservation; $1,050.00 for appraisals; and $2,023.25 for attorney's fees from March 1, 2014 through December 16, 2014. *Id.* ¶ 16. Finally, Mr. Morton updated the indebtedness on the loan through December 16, 2014: $97,191.28 in principal; $37,967.59 in interest; $69,978.73 in Add-On Charges; $3,778.07 in late fees; $3,207.03 in additional late fees-moratorium interest; and $3,254.50 in recoverable balance; with a total amount due of $214,416.17. From that amount, he subtracted $14,014.02 in attorney's fees included in that figure, because the Court separately determines the reasonableness of those fees. Accordingly, the total damages sought by Scotiabank as of December 16, 2014 was $200,402.15. *Id.* ¶ 17.

The Jameses did not file an Opposition to Scotiabank's initial Motion for Default Judgment and Summary Judgment, or to the Bank's Renewed Motion.

## II.     APPLICABLE LEGAL PRINCIPLES

### A. Default Judgment Standard

Federal Rule of Civil Procedure 55 sets forth the conditions under which a court may enter default judgment. To obtain a default judgment, the moving party must first seek an entry of default under Rule 55(a).[1] Once default is entered, the party may seek a default judgment from the Court pursuant to Rule 55(b)(2). Upon entry of default, the well-pleaded factual allegations in the complaint, except those relating to damages, are deemed admitted. *See DirecTV Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (stating that "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment"); *see also* Fed. R. Civ. P. 8(b)(6). The entry of default does not, however,

---

[1] Rule 55(a) provides that the clerk of court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

automatically mean that a default judgment will be entered. *See Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009) ("When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded."). The court must first ensure that it has subject matter jurisdiction over the action and personal jurisdiction over the defaulting defendant. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008) (citing *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 (3d Cir. 1978) (stating that a judgment entered without subject matter or personal jurisdiction is void)). A party is not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951).

When determining whether to grant default judgment pursuant to Rule 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> "(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the Soldiers' and Sailors' Civil Relief Act."

*Idewu v. Sealey*, 2012 WL 944781, at *2 (D.V.I. Mar. 19, 2012) (quoting *Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare, Vacation & Finishing Trades Inst. Funds v. Village Glass, Inc.,* 2012 WL 209076, at *1 (D.N.J. Jan. 3, 2012)); *see also* Fed. R. Civ. P. 55(b). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the

defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## B.  Summary Judgment Standard

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Klein v. Weidner,* 729 F.3d 280, 283 (3d Cir. 2013) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Hart v. Electronic Arts, Inc.,* 717 F.3d 141, 148 (3d Cir. 2013) (internal quotation marks omitted). The non-moving party '"must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or [ ] vague statements.'" *Patterson v. Glory Foods, Inc.*, 555 F. App'x 207, 211 (3d Cir. 2014) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)).

To demonstrate that there is a genuinely disputed issue of fact, a party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted).

In order to "prevail on a foreclosure claim, the plaintiff must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Anthony v. FirstBank Virgin Islands*, 2013 WL 211707, at *5, 58 V.I. 224 (V.I. 2013) (quoting *Thompson v. Florida Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009)); *see also* Am. Jur. 2d Mortgages § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract). "'Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.'" *LPP Mortgage, Ltd. v. Ferris*, 2014 WL 2459802, at *4 (D.V.I. June 2, 2014) (quoting *Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 971 (D.V.I. 1994)).

### III.   DISCUSSION

#### A.  Default Judgment against Christian

Scotiabank has satisfied the requirements necessary to obtain a default judgment against Christian. It has shown that: (1) Christian was validly served with process (Dkt. No. 10); (2) Christian has not appeared; and (3) default was entered against Christian by the Clerk of Court (Dkt. No. 18). The affidavit of the process server shows that Christian is not an incompetent person, and that he is not in the military service. (Dkt. No. 10).[2] In addition, Scotiabank has also

---

[2] The process server's affidavit provides: "Alphonso Christian responded to service in a normal manner and did not appear to be mentally disabled or have diminished capacity to understand what was happening." (Dkt. No. 10-1). The affidavit further provides: "At the time of service defendant was asked whether he/she is in active military service for the United States or for the Virgin Islands in any capacity whatsoever and gave a negative reply." (Dkt. No. 10-1). While the Court will accept in this instance the process server's affidavit regarding military service, counsel is advised that plaintiffs should satisfy this default judgment element by providing a

shown with specificity how it calculated the amount of the judgment. (Dkt. Nos. 27-5, 27-6, 34). While Scotiabank has not shown that Christian is not an infant, the Court is satisfied from the record in this case that the fact that he executed a Note and Mortgage in 1993 indicates that he has reached the age of majority.

Although Scotiabank also did not argue that default judgment is appropriate under *Chamberlain v. Giampapa*, the Court has considered the *Chamberlain* factors and finds that each factor weighs in favor of default judgment. *See Chamberlain*, 210 F.3d at 164 (identifying prejudice to plaintiff if default is denied, existence of a litigable defense, and defendant's culpability in the default as the three factors courts must consider to determine whether to grant default judgment). Specifically, the Court finds that Scotiabank is likely to be prejudiced if default judgment is denied because the Bank will otherwise have no other means to recover the debt it is owed. *See, e.g.*, *Palco Telecom Serv. v. Global Warranty Grp., LLC*, 2015 U.S. Dist. LEXIS 42699, at *17 (E.D.N.Y. Feb. 5, 2015) (finding that denial of the motion for default judgment would prejudice the plaintiff by "effectively leaving it without recourse and forestalling its ability to recover the debt owed"). In addition, Christian has failed to appear and/or raise any defenses in this matter, and his unresponsiveness to Scotiabank's Complaint demonstrates his culpability in the default. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984) (finding that culpability requires "more than mere negligence" and that "[r]eckless disregard for repeated

---

copy of a Military Status Report from the Department of Defense Manpower Data Center showing that the defaulting defendant was not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.*

communications from plaintiffs and the court . . . can satisfy the culpable conduct standard”); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Accordingly, default judgment against Christian is appropriate.

### B.  Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: “The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . .” 5 V.I.C. § 541(b).

Under the terms of the Mortgage, Scotiabank may recover “reasonable” attorney's fees. (Dkt. No. 27-4, ¶ 18). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be “reasonable.” *Flagstar Scotiabank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

“To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation.” *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were “reasonably expended,” excluding time billed that is “excessive, redundant, or otherwise unnecessary.” *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant

community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

With regard to the hourly rate, although Attorney Duensing indicated that his established billing rate was $350.00 per hour, the billing history indicates he charged $200.00 per hour from October 2011 until March 2014, when his billing rate increased to $250.00 per hour. (Dkt. No. 26-2). Similarly, Attorney Duensing stated that Christopher Brookhart's rate was $225.00 per hour. However, the billing history shows that he charged $250.00 per hour in February 2014 and $275.00 per hour in March 2014. *Id.* Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). The Court therefore concludes that the hourly rates charged here are reasonable and fall within the scope of rates for such services. *See Rode*, 892 F.2d at 1183.

Notwithstanding the reasonableness of the hourly rates, the Court finds that the amount of attorney's fees billed for this matter between October 12, 2011 and March 18, 2014—$12,290.50—to which the Bank added $2,023.25 for attorney's fees between March 1, 2014 and December 16, 2014 for unspecified work and hours billed (Dkt. No. 34-1, ¶ 16)—totaling $14,313.75—is excessive.[3] This matter involves "run-of-the-mill debt and foreclosure claims, and [is being] disposed of at the summary judgment [and default judgment] stage. The issues

---

[3] Attorney's fees awards in *contested* summary judgment foreclosure cases in this District have been significantly less than the $14,313.75 requested by Plaintiff in this essentially uncontested summary judgment case. *See, e.g., FirstBank v. Christopher,* No. 2013-93 (D.V.I. Feb. 26, 2015) (awarding $8,033.50 in attorney's fees in hotly contested debt and foreclosure action decided on summary judgment); *Bank of Nova Scotia v. Ross,* No. 2010-118 (D.V.I. Sept. 26, 2014) (awarding $11,160.80 in long-running debt and foreclosure action decided on summary judgment and default judgment).

[are] not novel, but, rather, relatively commonplace." *FirstBank Puerto Rico v. Caribbean Island Adventure, Inc.*, 2008 WL 783537, at *2 (D.V.I. Mar. 20, 2008). Indeed, VIBIR admitted that Scotiabank held a first priority lien, and the Jameses did not oppose Scotiabank's Motion for Summary Judgment. While the Court recognizes that Defendants Raymond James and Lystra James and the VIBIR answered the Complaint, and that Christian was alleged to have conveyed the Property, without Scotiabank's authorization, to the Jameses, these facts cannot account for the disparity in attorney's fees between this and other essentially uncontested summary and default judgment debt and foreclosure cases in this District.[4]

For example, counsel and staff spent 10.0 hours, and billed $1,928.00, on tasks reasonably associated with preparing the four-page Complaint. Further, counsel and staff spent 29.2 hours, and billed $5,034.00, on tasks reasonably associated with preparing the initial four and one-half page Motion for Default and Summary Judgment, accompanied by a four-page statement of undisputed facts. These examples are illustrative of the excessive amount of time devoted to tasks involved in litigating this case.[5]

In view of the 63.70 total hours billed—which does not include the unspecified time associated with the $2,023.25 requested by the Bank for attorney's fees between March 1, 2014 and December 16, 2014—the Court concludes that only some of the attorney's fees claimed by

---

[4] *See, e.g., Nationstar Mortgage, LLC v. Florio,* 12-cv-0033 (D.V.I. July 1, 2014) (awarding $4,718.61 in attorney's fees and costs in essentially uncontested summary judgment and default judgment debt and foreclosure case); *Bank of America v. Deshazer,* 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees for 14.55 hours of work in default judgment case).

[5] The precise amount of time devoted to a particular task is difficult to ascertain because multiple tasks are sometimes lumped together in one entry. However, it is Scotiabank's burden to show that the attorney's fees sought are reasonable. *See Charlery v. STX Rx, Inc.,* 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion.").

Scotiabank are reasonable. The Court will therefore reduce the attorney's fees award in two steps. First, the Court will disallow the $2,023.25 in attorney's fees for work between March 1, 2014 and December 16, 2014, as set forth in Mr. Morton's affidavit. (Dkt. No. 34-1, ¶ 16). Scotiabank has not substantiated this request with any billing history and the Court will not award fees without proper support.[6] Second, the Court will reduce the sum requested in Mr. Duensing's March 2014 affidavit by sixty percent, from $12,290.50 to $4,916.20.[7] *See Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205 (3d Cir. 1969) (allowing 7.5% of requested attorney's fees in mortgage foreclosure case); *Caribbean Island Adventure*, 2008 WL 783537, at *2 (allowing 6%, or $1,034.26 of $16,861.16 in requested attorney's fees and costs in debt and foreclosure case); *Ruyter Bay Land Partners,* 2008 WL 413308, at *2 (allowing 21%, or $2,000, of the $9,511 in requested attorney's fees and costs).

With regard to costs, under the terms of the Mortgage, Christian agreed to pay "all costs and expenses of foreclosure." (Dkt. No. 27-4, ¶ 18). The Court infers that in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits

---

[6] As noted in the accompanying Judgment and Order, Scotiabank will have an opportunity—prior to the entry of the Court's Order Confirming Sale—to file an application for additional attorney's fees and costs incurred. Although this opportunity usually contemplates fees and costs incurred after the date of those already submitted, the Court will allow Scotiabank to include for the Court's consideration the $2,023.25 in fees referenced in Mr. Morton's Affidavit with the appropriate supporting documentation. The Court notes, however, that the time from March 1, 2014 through March 18, 2014 overlaps with time submitted by counsel (Dkt. No. 26-2) and the Bank (Dkt. No. 34-1).

[7] In this case where Christian defaulted, the VIBIR acknowledged the Bank's first priority lien, and the Jameses did not respond to the motion for summary judgment, the litigation should not have consumed 63.70 billed hours.

reimbursement for reasonable fees and costs). Scotiabank is seeking reimbursement of $1,038.50 for the following costs: recording fees, filing fees, process server fees, title searches, and delivery fees, as well as for photocopying, postage, and long-distance telephone calls.

Fees related to service of process, filing, recording, and delivery fees, and title searches will be allowed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients," and noting that it is "well settled" that 5 V.I.C. § 541 gives the Court discretion to award fees and costs to prevailing parties). The Court finds these fees reasonable and will award costs in the amount of $997.00.

On the other hand, it is well-established that "photocopying and other reproduction costs are nonreimbursable." *Lempert v. Singer*, 1993 WL 661181, at * (D.V.I. 1993) (citing *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278 (Terr. Ct. 1981) (office expenses, such as photocopying and telephone calls are not reimbursable)); *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co.,* 754 F. Supp. 459, 464 (D.V.I. 1991) (charges for photocopying and telephone calls have been "repeatedly held as not reimbursable under section 541"); *see also Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (observing that "overhead costs" such as photocopies, telephone calls, and regular postage are not compensable under § 541). The Court will disallow costs for photocopies, postage, and long-distance telephone calls, totaling $41.50.

In view of the foregoing, the Court will award a total of $5,319.20 in attorney's fees and costs through March 18, 2014, with the caveat noted in footnote five above.

### C.  Calculation of Damages

In its December 17, 2014 Supplemental Affidavit of Indebtedness, Scotiabank seeks a total amount due of $214,416.17 through December 16, 2014, comprised of: $97,191.28 in principal; $37,967.59 in interest; $69,978.73 in Add-On Charges; $3,778.07 in late fees; $3,207.03 in additional late fees-moratorium interest; and $3,254.50 in recoverable balance. (Dkt. No. 34-1). From that amount, Scotiabank subtracted $14,014.02 in attorney's fees that was included in the Add-On Charges and recoverable balance, stating that the Court must separately determine the reasonableness of those charges.[8] Accordingly, the total damages sought by Scotiabank was $200,402.15, plus attorney's fees and costs. *Id.* ¶ 17. The Court, however, finds that the figures total $215,377.20. Subtracting $14,014.02 in attorney's fees leaves $201,363.18 in damages.

The Court will add the $5,319.20 in attorney's fees and costs it has awarded to the Bank's $201,363.18 damages figure. Accordingly, the total damages awarded will be $206,682.38.

### D.  Summary Judgment against VIBIR; VIBIR's Cross-Claims

Defendant VIBIR has "acknowledge[d] the priority of the real property mortgage held by Plaintiff" in this action. (Dkt. No. 22). Since VIBIR was named as a Defendant in this lawsuit because it had a lien on the same Property as Scotiabank, and there is no dispute that Scotiabank's lien has priority over VIBIR's lien, the Court will grant Scotiabank's Renewed

---

[8] The Bank's December 17, 2014 Affidavit of Indebtedness indicated that $11,990.77 in legal fees, incurred between December 2003 and July 2013 (Dkt. No. 34-3), was included in the Add-On Charges, and $2,023.25 in legal fees, incurred between March 1 and December 16, 2014, was included in the Recoverable Balance, totaling $14,014.02. (Dkt. No. 34-1). However, Attorney Duensing's March 20, 2014 Memorandum of Costs indicated that $12,290.50 in attorney's fees was incurred between October 2011 and March 18, 2014. (Dkt. No. 26-2). Scotiabank offers no explanation for the disparity between the two affidavits. The Court has used the attorney's fees figures and costs figures contained in the Duensing affidavit to calculate the amount of attorney's fees due, as they are particularized to a greater degree than in the Affidavit of Indebtedness.

Motion for Summary Judgment as to VIBIR. The Court finds that Scotiabank has a first priority lien on the Property, and VIBIR has a second priority lien.

VIBIR also seeks judgment in its favor for the outstanding tax debt owed by Christian and the Jameses. It attached a certified Affidavit of Tax Debt dated March 6, 2012 to its Answer to the Complaint and Cross-Claim. (Dkt. No. 14-1). The Affidavit, signed by Claudette Watson Anderson, Director of the VIBIR, provides that the tax liabilities against Christian for 2004-2007 totaled $5,967.10, and the tax liabilities against Raymond and Lystra James for 2005 and 2008 totaled $13,974.73. *Id.* However, VIBIR filed a lien only against the Jameses; VIBIR did not file a lien on the Property for Christian's outstanding tax debt. *Id.*.

Accordingly, the Court finds that VIBIR holds a valid lien against the Property for the taxes owed by the Jameses; that it is a second priority lien; and that it may be foreclosed. The Court will incorporate the Jameses outstanding obligation to VIBIR, as set forth in its lien, into the Judgment of Foreclosure.

### E.  Summary Judgment against Raymond and Lystra James

As indicated above, the Jameses did not respond to Scotiabank's Motion for Summary Judgment. There is no material question of disputed fact that Christian transferred the Property to Raymond and Lystra James by Corrective Deed of Gift dated March 11, 2004, and that the Corrective Deed declared the Property free from encumbrances despite the recorded Mortgage. (Dkt. Nos. 27, 27-1). The Jameses have not contested Scotiabank's entitlement to a judgment of debt and foreclosure on the Property. The Court finds that summary judgment against the Jameses is appropriate.

## IV.    CONCLUSION

For the reasons discussed above, the Court will grant Plaintiff's Renewed Motion for Default Judgment against Defendant Alphonso Christian a/k/a Alphonso P. Christian. (Dkt. No. 25). The Court will also grant Plaintiff Bank of Nova Scotia's Renewed Motion for Summary Judgment against Defendants Raymond James and Lystra James, and Defendant Director of the Virgin Islands Bureau of the Internal Revenue of the Government of the Virgin Islands. *Id.*

The Court will award a total of $206,682.38 in damages, which includes an award of $5,913.20 in attorney's fees and costs through March 18, 2014.

Further, pursuant to 28 V.I.C. § 533, the Court will award VIBIR judgment of $13,952.13 against Defendants Raymond James and Lystra James on VIBIR's second priority lien on the Property.

The Court will deny as moot Scotiabank's initial Motion for Default Judgment and Summary Judgment. (Dkt. No. 19).

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: July 30, 2015

_____/s/_____
WILMA A. LEWIS
Chief Judge

20